Reese, J.
delivered the opinion of the court.
This is an action of trover brought by the plaintiff, a citizen of the State of Mississippi, against the defendant, the sheriff of Davidson county in the State of Tennessee, to recover the value of two slaves. Upon the trial it appeared in evidence, and by the agreement of the parties, that the slaves in question were the property of Yerger in the year 1838, when he was a citizen of and resident in the State of Tennessee; that in that year he sold them to one Bankhead, and in October of the same year he removed to and became a citizen of Vicksburg, in the State of Mississippi; .that after his removal, Bankhead became dissatisfied with the slaves, the contract was rescinded, and they again became the property of Yerger; that the slaves having been placed in jail for safe keeping, Yerger wrote to his agent in the winter of 1838-9 to send them to him at Vicksburg, stating that he thought they would bring a better price at that place, and that he would sell them at that place, and they were in the winter of 1838-9 sent to him at Vicksburg; that those slaves were originally bought by Yerger for family use, but they not suiting him he had them sold as before stated to Bankhead; that after the arrival of the slaves at Vicksburg, Yerger, on the 20th February, 1839, sold them to Owen Lane for twelve hundred dollars, on twelve months credit, and received from said Lane his note under seal for that amount, payable twelve months after date; that he made a bill of sale to Lane in Vicksburg, and delivered him the slaves there; and Lane brought them to Tennessee, where they were levied on by execution in the hands of defendant against Lane and sold as his property; that Lane at the time of the purchase in question was a citizen of and resident in Tennessee; that at the sale by the defendant as sheriff, Yerger, by his agent, forbid the sale and claimed the property. The defendant read in evidence judgments and executions against the same, showing his power and duty to sell the same.
This suit was brouaht on the 3d day of September, 1839.
The printed laws and constitution of the State of Mississippi and the judgments of its courts supposed to bear upon the case, *261 were by consent of the parties read to the court and jury upon the trial of the cause and in like manner agreed to be regarded as a part of the record in the Supreme Court. The Circuit Court charged the jury, that if the plaintiff carried, or caused to be carried, the slaves in dispute, to the State of Mississippi for sale in 1838, such transportation was in violation of the laws of Mississippi, and that the criminal offence was complete so soon as the slaves entered the State; that if the plaintiff took any note, bond or security for the purchase money, it was void by the statute of Mississippi passed in 1837, but the sale itself was not void and vested Owen Lane with a title at law to said slaves, which was subject to sale under an execution against him for his debts.” A verdict was rendered in favor of the defendant. The plaintiff moved for a new trial, which was refused, and he has prosecuted his appeal to this Court. The cause was taken up at the last term of this court; but because the decision of the Supreme Court of the United States in the case of Graves vs. Slaughter, reported in 15 Peters, had given a construction to the prohibitory clause of the constitution of the State of Mississippi on the subject of the introduction of slaves as merchandise within that State, and had declared the legal effect of that clause, in a manner Variant from and in conflict with the previous judgments, on the same subject, of the State Courts of Mississippi; and because we did not and could not know what influence upon the opinions of the last named courts, the decision referred to might produce; we deemed it to be our duty to direct the case to lie over until the present term, supposing that in the mean time the final judgment of the Court of Errors and Appeals of Mississippi, upon the subject, would in the intermediate time be laid before us.
This has been done. The clause of the Mississippi constitution in question declares, “that the introduction of slaves into that State as merchandise, or for sale, shall be prohibited from and after the first day of May, 1833.” The High Court of Errors and Appeals of the State of Mississippi, upon full and elaborate discussion in the cases of Green vs. Robertson, Hite & Fitzpatrick vs. Glidewell, and Cowan and others vs. Boyce and others, all reported in5 Howard, had determined that the clause *262 in question is not a mandate merely to the legislature, but is an inhibition per se, and that all contracts for slaves, so introduced into the State after the first day of May, 1833, are void by virtue of that clause. The Supreme Court of the United States, as we have said, in the case of Graves vs. Slaughter, hold the clause to be mandatory to the legislature to prohibit the introduction of slaves, but not to be, by its own proper force, a prohibition. Since the publication of that opinion, the question has again come under the consideration of the Court of Errors and Appeals of Mississippi, in the case of John S. Brian vs. John B. Williamson, determined in March last, and in an opinion delivered by Chief Justice Sharkey, which exhibits patient investigation, extensive research, and vigorous thought, the court unanimously declare their adherence to their first conclusions. The law of Mississippi then is, that the introduction of slaves into that State as merchandise, and their sale, is contrary to the public and constitutional policy of that State, and that therefore such introduction is a public wrong, and such sale void. That question the courts of Mississippi have a right to determine; that question they conclusively determined. If our views with regard to the proper construction and legal effect of that portion of the Mississippi constitution differed from that of their judges, it would be our duty cheerfully and promptly to surrender such views; and concurring, as we do, with the courts of Mississippi in the correctness of the exposition made by them, it were idle and useless to attempt, by any reasoning or researches of our own, to fortify their position: they need it not.
When a contract is invalid, by the law of the place where made, it is held to be invalid in all other places or countries where it may be drawn into question; and this, we take it, without any exception whatever. But when a contract is valid, by the law of the place at which it is made, it will, in general, be held to be valid and be enforced in all other places, subject to be controlled, however, in some instances, by the public policy of the place of the former. A contract of sale of slaves introduced into the State of Mississippi as merchandise, since the first of May, 1833, is invalid and void by the law of Mississippi; and being so invalid and void, it will be held here in *263 Tennessee to be invalid and void also. These two propositions are very clear. And what is not a little singular, the counsel for the plaintiff and for the defendant alike insist upon the truth of these two propositions and upon their decisive influence upon the case before us. The counsel for the plaintiff insist, that the sale from Yerger to Lane, being against the public and constitutional policy of Mississippi, and therefore void, the delivery and bill of sale of the slaves from Yerger to Lane and the bill single from Lane to Yerger are as if they were now and heretofore non-existent and present no obstacle whatever to the recovery of the negro slaves, the title being and having been, and remaining during all the time, in him. The counsel for the defendant contends, that the contract of sale, the bill of sale evidencing it, the note for the consideration, are all void, indeed, as being against the public policy of Mississippi, but they are not void in the sense of non-existence; they do exist, and they constitute an insuperable obstacle to the plaintiff’s recovery, his very case imposing upon him the necessity, in his character of plaintiff, to found his right to recover, upon his own violation of the law and public policy of the State. The question in this phasis of it, has not come, so far as we are aware, under consideration in the courts of Mississippi. • They have determined repeatedly, that the vendor cannot recover the consideration money, when it is in the power of the vendee to show that the contract was in violation of public policy.' Those courts, it would seem, have not yet been called on to determine that such vendor, having sold and delivered a slave, having executed a contract against law and public policy, shall not be permitted to alledge that, and recover back his slave.
But the fact of no such case having arisen or having been determined there, we deem altogether immaterial, the question being one at common law, the principles being clear and indisputable, and the case presenting no other difficulty than the application, by means of reason and common sense, of those clear and indisputable principles, to the attitude of the parties and the facts, of the case. This is an executed contract. The plaintiff says it is invalid and void, because against the constitution and law and public policy of Mississippi, and therefore he *264 must be permitted to recover the slaves or their value. Will the courts permit this? will the courts, he being actor, lend him their aid? We are well satisfied they will not. If they should, the law, the constitution, the public policy of Mississippi, would go for nothing, and the courts themselves would be made the agents and instruments for the counter-action and defeat of the constitution and public policy. If this suit can be maintained, the slave trader can be permitted to taire into the State of Mississippi his hundred slaves, sell them all, get paid for their full value, deliver them, execute bills of sale and leave the country, and he can afterwards bring his suit for each of them and recover them or their value. What shall prevent him from recovering, if the principle to which we have alluded will not do it? Shall the fact, that he was paid for them all at the time of delivery, have the effect to repel his recovery, in an action of detinue or trover? That circumstance can have no such effect. The contract of sale, void by public policy, is not made valid by the payment of money. And this very plaintiff would have precisely the same right to recover in this action, if instead of receiving a bill single for twelve hundred dollars, due some months after the commencement of this action, he had in fact received at the time of delivery of the slaves the sum of twelve hundred dollars in cash. And without putting a case of payment' at the time of sale, the slave dealer would have nothing to do but to sell and convey the negroes, and some years after-wards, at his convenience, bring his action of trover 'and recover the value of the slaves and the value of the hire that had accrued; and the courts of Mississippi would be made the passive instruments for the effectuation of a scheme, the very scope and object of which was to baffle and overthrow the settled public and constitutional policy of the country. Courts have never permitted themselves to be so used: they have never so applied the great principles we are discussing. Take the case of the vendee: A Mississippi planter buys ten slaves from a trader; they are delivered; he gets a bill of sale, and he pays the money for them; he keeps them with a strong hand, but he brings an action for money had and received; he sets forth in proof the illegality of the transaction: what shall prevent him *265 from recovering? Why, obviously, the principle we have been considering, and that alone, that where a contract has violated public policy, and the parties are equally derelict; neither party will be heard as a plaintiff to base his right to the aid of the court, upon the allegation or proof of his violation of the law. So in this case, as in most cases, the court would repel either party to the public wrong, coming to invoke the aid of thé court on the ground of such wrong. The popular argument, therefore, as one to be entertained in a court of justice, has no solidity in it, that Mississippi should permit the trader to recover either the money or the slave, through the medium of a court of justice: he does not recover the money, for the defendant, because he is such, can, upon well settled principles, allege and show the invalidity of the contract: he does not recover the slave, because, being plaintiff, he will not, in that character, be permitted to allege the invalidity of the contract arising from his own wrongful act, as constituting the reason or ground for his action. And this is the condition of the parties in the numerous and varied classes of cases falling within the range and comprehension of the general principle we have been discussing. If Mississippi repels either party, coming as plaintiff from her courts of justice and enforces her penal statutes, her constituticmgJL policy will have effect: if she suffer either or both to$T plaintiffs into her courts of justice, and allege the vioía^on of law, and the consequent invalidity of the contract, as a reason, why the property should be recovered back by theipma^er the money by the other party, her policy would be defeat such action of her own courts, and the controlling pfemple of such universal application, which we have been insist would be by them overlooked or disregarded. We do not consider it necessary to cite English or American cases, on this subject. The same principle is intended to be applied in them all, and any discrepancy is more apparent than real, and results merely from the application of an admitted and well settled principle to varying facts and circumstances, and to the different attitude of parties in particalar cases.
The case of Allen vs. Dodd, determined by this court at Knoxville in July last, presents a case of the application of *266 this principle to a case bearing much resemblance in its facts and circumstances, and in the attitude of the parties, to the case now under consideration. Allen gave to Dodd the following instrument: “For value received, I promise to pay John Dodd two hundred dollars in specie whenever Martin Van Buren is elected President of the United States at this presidential election; and if either Van Buren or Harrison dies before the election in 1840, then the said Dodd is to receive but one hundred dollars.”
At the time this instrument was made, Dodd delivered to Allen a grey horse, worth one hundred dollars. It was a wager on the impending presidential election. After the presidential election, Dodd sued Allen in debt, for the value of the horse, with a count in detinue.
The Circuit Court charged the jury, that the plaintiff might treat the contract as a nullity and maintain the action. This court held the contrary, and said, “If a party comes into court seeking to enforce an immoral or illegal contract, it is most obvious that he must be repelled by the court, if it would not countervail the very end and object of its creation. There are some cases, indeed, where something having been done, under such a contract a party comes not to enforce it, but in disregard and disaffirmance of it., to right himself for some injury sustained, or loss incurred, by means of it. This he may do, or not do, according to the times and stage of the affair, the nature of the transaction, and other circumstances. He may often do so, also, when the matter is consummated, as in transactions merely illegal, and where the parties, although both in fault, stand in a different relation to the transaction, and where the policy and interest of the community are in favor of permitting the one party to set aside the contract, without permitting which indeed, it would have been in vain to have declared it illegal, as contracts of an usurious character.” But the court held the case then before'them not to be of that character, but to be a contract against public policy, where the parties were equally derelict, and where each would be refused, the contract being executed, the aid of a court of justice.
*267 In this case we likewise incline to the opinion, that Yerger, as immigrant settler within the State of Mississippi, comes, as to the slaves in question, within the exception mentioned in their constitution, and that therefore his contract with Lane was valid.
This point it is unnecessary to determine. We seek not to meddle with the construction of foreign laws and constitutions, beyond the point required by the necessity of our position.
Upon the whole, then, although the Circuit Court took an erroneous view of this case, the verdict and judgment were right and must be affirmed.